## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 21-209 |
| TYRESE CARTER | : | |
| | : | |

### MEMORANDUM

**KENNEY, J.**                                                                                    **April 13, 2023**

Defendant Tyrese Carter brings this *pro se* Motion for Compassionate Release or Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A) arguing that he is entitled to release or a reduction of sentence because of his medical conditions, the sentencing disparity in drug offenses involving powder and crack cocaine, and an incorrect reliance on Sentencing Guideline policy statements. ECF No. 37. For the reasons set forth below, the Court will deny Defendant's Motion (ECF No. 37).

### I.      BACKGROUND

#### A.      Mr. Carter's Criminal History

Mr. Carter has a lengthy criminal background which began at the age of 16. PSR ¶ 37. His criminal history includes convictions for aggravated menacing, criminal conspiracy engaging – aggravated assault, and aggravated assault. *See* PSR ¶¶ 27–42. The instant offenses were Mr. Carter's first exposure to the federal justice system. *See id.*

As to the instant offenses, on September 30, 2020, members of the Philadelphia Police Department ("PPD") and the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") executed a search warrant on Mr. Carter's residence. PSR ¶¶ 13–14. Mr. Carter, his girlfriend, and an infant child were the only occupants of the residence. *Id.* ¶ 14. The PPD and

ATF recovered the following substances from the residence: (i) approximately 54 grams of cocaine base ("crack cocaine"), a Schedule II controlled substance; (ii) 121 small containers weighing 0.037 grams, each containing cocaine base; (iii) 138 small containers weighing approximately 8.711 grams, each containing methamphetamine, a Schedule II controlled substance; (iv) 58 two-milligram Alprazolam tablets, a Schedule IV controlled substance; (v) approximately 563.5 grams of marijuana, a Schedule I controlled substance; (vi) narcotics packaging, including new and unused packaging; (vii) drug distribution paraphernalia, including a digital scale and ceramic plates; (viii) ammunition, firearms parts, and a Poly 80 style pistol loaded with 21 rounds of .40 caliber PMC branded ammunition, which were previously observed in Mr. Carter's possession in social media posts. *Id.* ¶¶ 15, 17.

Mr. Carter was arrested for narcotic and firearm violations before being transported to the PPD Southwest Detective Division. *Id.* ¶ 16. Upon arrival, Mr. Carter was placed in an interview room and provided his *Miranda* rights before he elected to waive his right in order to provide a statement. *Id.* In his statement, Mr. Carter admitted to the possession of narcotics, drug packaging, firearms, ammunition, and accessories. *Id.* He stated the crack cocaine was for resale, but the methamphetamine belonged to a friend. *Id.* He stated he purchased the firearm a few weeks prior from a homeless male in Philadelphia and that he purchased the ammunition from a store in Delaware. *Id.* He stated he was a previously convicted felon[1] and, as such, he knew he was not permitted to possess a firearm. *Id*. ¶¶ 16, 19. Mr. Carter also stated that he and his girlfriend lived in their apartment for a few months and no one else resided there. *Id.* ¶ 16.

---

[1]  Mr. Carter was previously convicted of criminal conspiracy engaging – aggravated assault and aggravated assault for which he was sentenced to 4 to 10 years of imprisonment in the Delaware County Court of Common Pleas. PSR ¶¶ 19, 41.

On May 20, 2021, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment against Mr. Carter charging him with one count of possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count One) and one count of possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two). ECF No. 9. On September 16, 2021, Mr. Carter pled guilty to Counts One and Two of the indictment in accordance with a guilty plea agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). ECF Nos. 19, 20. On February 10, 2022, this Court accepted the joint sentencing recommendation of the parties and sentenced Mr. Carter to 60 months' incarceration, four years of supervised release, and a $200 special assessment. ECF No. 29.

After being sentenced, Mr. Carter was transferred to local custody, where he faced unrelated charges, and was mistakenly released despite the U.S. Marshals lodging a detainer. ECF No. 31 ¶ 5. Mr. Carter informed officials he would turn himself in, but he failed to, so the Court issued a bench warrant. ECF No. 32. Mr. Carter was arrested by the U.S. Marshals on the outstanding bench warrant on March 24, 2022. ECF No. 34.

Mr. Carter is currently serving his sentence at FCI Allenwood Medium, with a minimum release date of January 2, 2025. ECF No. 39 at 3. As of January 2023, Mr. Carter had approximately 4 months of credit for good conduct time and had served approximately 27 months, for a total of 31 months. *Id.* at 3–4. Also as of January 2023, he had committed three disciplinary infractions during his time in custody: two for failing to obey an order and one for being in an unauthorized area. *Id.* at 4.

### B.      Mr. Carter's Health History

Mr. Carter's Motion details injuries which arose from when Mr. Carter was the victim of a shooting in May 2020, which was prior to his arrest in this case. PSR ¶ 73. The gunshot wound caused Mr. Carter's lung to be punctured and collapse and it also caused fractures in his right ribs. *Id.* An April 2022 chest X-ray revealed that Mr. Carter has a 21 x 12 mm metallic bullet projectile located in his right paramedian posterior chest wall, along with some embolization coils and small fragments within the right lower lobe superior segment at the posterior and medial aspect. ECF No. 40 at 77. The chest X-ray also showed that Mr. Carter had fractured ribs that have since healed. *Id.* Mr. Carter's Motion also states he suffers from Post-Traumatic Stress Disorder ("PTSD"), depression, Gastro-esophageal reflux disease without esophagitis,[2] supple, symmetric, trachea midline, asthma, and hypertension. ECF No. 37 at 1–2.

Mr. Carter's medical records further reveal that he has a prior diagnosis of Opioid Abuse and a history of kidney stones. ECF No. 40 at 73, 77. Mr. Carter has received a complete dose of the Moderna COVID-19 vaccine and has tested positive for COVID-19 in the past. ECF No. 40 at 70, 82. There are no other significant medical conditions listed for Mr. Carter in his prison medical records.

## II.      <u>LEGAL STANDARD</u>

Mr. Carter moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 37. As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) allows courts to modify a term of imprisonment in any case "if the court finds the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued

---

[2]      Mr. Carter's medical records indicate that his Gastro-esophageal reflux disease without esophagitis is in remission. ECF No. 40 at 61.

by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). Defendants filing such a motion must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." [3] 18 U.S.C. § 3582(c)(1)(A).

While Congress has not defined "extraordinary and compelling reasons," the United States Sentencing Commission issued a policy statement to describe qualifying circumstances. *See* U.S.S.G § 1B1.13. Although the policy statement predates the First Step Act, the Third Circuit has articulated its persuasiveness in shedding light on what constitutes "extraordinary and compelling." *See Andrews*, 12 F.4th at 260 ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute." (citations omitted)).

The Sentencing Commission policy statement sets out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(C). Extraordinary and compelling medical conditions include those in which the defendant is suffering from a terminal illness, "suffering from a serious physical or medical condition," "suffering from serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process." *Id*. § 1B1.13, cmt. n.1(A). Moreover, the medical condition must be one which "substantially diminishes the

---

[3]      On July 29, 2022, Mr. Carter submitted a request to the warden for support for compassionate release and on August 11, 2022, the Bureau of Prisons denied Mr. Carter's request. ECF No. 39 at 4. The Government agrees that Mr. Carter has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). *Id.*

ability of the defendant to provide self-care within the environment of a correctional facility and

from which he or she is not expected to recover." *Id.* The Sentencing Commission also includes a

"catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling

reason[s] other than, or in combination with, the reasons described in subdivisions (A) through

(C)." *Id.* § 1B1.13 cmt n.1(D); *see also United States v. Adeyemi*, 470 F. Supp. 3d 489, 509–510

(E.D. Pa. 2020) (stating that the "catch-all" prevents courts from being "hamstringed because the

Sentencing Commission has failed to update the pertinent guidance").

Only if a defendant's circumstances qualify as "extraordinary and compelling," will the court

look to the Section 3553(a) factors to determine whether the defendant is entitled to a reduction in

sentence. 18 U.S.C. § 3582(c). Those factors are:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant; (2) the need for the sentence
> imposed-- (A) to reflect the seriousness of the offense, to promote
> respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct; (C) to protect
> the public from further crimes of the defendant; and (D) to provide
> the defendant with needed educational or vocational training,
> medical care, or other correctional treatment in the most effective
> manner; … and (6) the need to avoid unwarranted  sentence
> disparities among defendants with similar records who have been
> found guilty of similar conduct.

The defendant bears the burden of proving by a preponderance of the evidence that the requested

relief is warranted. *United States v. Jeffries*, No. CR 14-106, 2021 WL 2000555, at \*7 (W.D. Pa.

May 19, 2021).

III.  **DISCUSSION**

### A. Defendant's Motion for Compassionate Release

Mr. Carter moves for compassionate release arguing he is entitled to release because of his

medical conditions, a bill which eliminates the sentencing disparity between power and crack

6

cocaine, and because the Court should have ignored the Sentencing Guidelines policy statement. ECF No. 37. Specifically, he states he suffers from PTSD, hypertension, loss of one lung, and bullet fragments lodged in his body. ECF No. 37 at 1. Mr. Carter argues that the courts have offered relief to prisoners who suffer from terminal illness such as in his case. *Id.* (citing *United States v Mueller*, 471 F. Supp. 3d 625 (E.D. Pa. 2020); *United States v. Stephens*, No. 3:11-cr-0016, 2020 WL 7699839 (D.V.I. Dec. 28, 2020); *United States v. Walls*, No. 2:12-CR-00173, 2020 WL 6390597 (W.D. Pa. Nov. 2, 2020)). In support of his Motion, Mr. Carter also points to the Eliminating a Quantifiably Unjust Application of the Law Act (EQUAL ACT) S.79, 117th Cong., which was a bill to eliminate the federal sentencing disparity between drug offenses involving crack cocaine and powder cocaine that did not pass. ECF No. 37 at 1. Finally, Mr. Carter argues that the Sentencing Guideline § 1B1.13 is inapplicable. *Id.* at 1–2.

**B.  Government's Response in Opposition to Defendant's Motion for Compassionate Release**

 In Opposition to Mr. Carter's Motion for Compassionate Release, the Government argues that Mr. Carter has failed to establish extraordinary and compelling circumstances that would warrant his release. ECF No. 39 at 1. First, the Government indicates that a review of Mr. Carter's medical records reveals a young man suffering from depression and kidney stones, who had a previous gunshot injury, and has been vaccinated against COVID-19. *Id.* at 5. The Government argues none of these conditions present an extraordinary condition. *Id.* Second, the Government contends that Mr. Carter's argument that his sentence would be lower if Congress passed legislation equalizing the treatment of cocaine powder and crack has no merit because "the length of a sentence that was lawful when imposed does not provide a basis for consideration for compassionate release." *Id.* at 6 (citing *Andrews*, 12 F.4th at 260). Finally, the Government argues

that even if the Defendant presented a basis for consideration, relief should be denied because all of the pertinent circumstances, including the 3553(a) factors counsel against release *Id.* at 6–8.

### C.    Analysis

#### 1.    *Extraordinary and Compelling Reasons*

Mr. Carter has failed to satisfy his burden of proving the "extraordinary and compelling" nature of his circumstances so as to warrant a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A). First, Mr. Carter's medical conditions are not an "extraordinary and compelling" reason sufficient to grant early release. As stated above, with respect to medical conditions, the Sentencing Guidelines policy statement at U.S.S.G. § 1B1.13 explains that an extraordinary condition[4] exists where a defendant is: "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13, cmt. n.1(A). Moreover, the medical condition must be one which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Mr. Carter's is a 33-year-old man who suffers from physical or medical conditions, such as injuries due to his gunshot wound, PTSD, depression, and kidney stones. However, none of the conditions Mr. Carter cited limit his ability to provide self-care within a prison facility.

---

[4]    The Sentencing Guideline policy statement also states that an extraordinary condition exists where: "The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A). Here, Mr. Carter has not alleged any terminal illness and therefore, this portion of the policy statement is not applicable to his Motion.

Accordingly, Mr. Carter's health conditions do not create an extraordinary or compelling reason to reduce his sentence.

The three cases that Mr. Carter cites in support of his medical conditions being extraordinary and compelling are distinguishable because all three cases were decided in the height of the COVID-19 pandemic prior to a vaccine being available. *See U.S. v Mueller*, 471 F. Supp. 3d 625 (E.D. Pa. 2020) (granting compassionate release during the height of the COVID-19 pandemic to 64-year-old who had only one functioning lung, along with hypertension and other medical conditions, after he had served over 12 years of his sentence for possession of a firearm and for possession of 0.25 grams of heroin for personal use and was two years away from his release date); *United States v. Stephens*, No. 3:11-cr-0016, 2020 WL 7699839 (D.V.I. Dec. 28, 2020) (granting motion for compassionate release to 66-year-old suffering from Chronic Obstructive Pulmonary Disease and other conditions that had served 115 months of his 145 month sentence, finding his underlying medical conditions and advance age, in light of the COVID-19 pandemic and the presence of COVID-19 within the facility where he was housed, satisfy the extraordinary and compelling prong of the Section 3582 analysis); *United States v. Walls*, No. 2:12-CR-00173, 2020 WL 6390597 (W.D. Pa. Nov. 2, 2020) (granting motion for compassionate release to defendant who served approximately 29 months of a 48 month sentence finding that defendant's spinal cord injury and underlying conditions, viewed in light of the COVID-19 pandemic, satisfy the extraordinary and compelling prong of the Section 3582 analysis). Now, however, "District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release." *United States v.*

*Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (collecting cases). Here, Mr. Carter has received a complete dose of the COVID-19 vaccine and therefore, the Court does not find this threat of the pandemic, combined with Mr. Carter's medical conditions, constitutes an extraordinary and compelling reason for compassionate release. Accordingly, Mr. Carter has not presented evidence that he suffers from a serious physical or medical condition or serious functional or cognitive impairment that substantially diminishes Mr. Carter's ability to provide self-care within the prison facility and from which he is not expected to recover, which amount to extraordinary and compelling reasons warranting a reduction in his sentence.

Mr. Carter also argues that the EQUAL ACT supports his reduced sentence. ECF No. 37 at 1. The Equal Act was a bill to eliminate the federal sentencing disparity between drug offenses involving crack cocaine and powder cocaine. *See* S.79, 117th Cong. (2021). However, this bill did not pass, and therefore, the Court does not find this proposed legislation constitutes an extraordinary and compelling reason to reduce Mr. Carter's sentence.[5] *See United States v. Morgan*, No. 1:09-cr-20254, 2023 WL 2072084, at *7 (E.D. Mich. Feb. 17, 2023) (finding the EQUAL ACT is neither an extraordinary nor compelling reason for a sentence reduction); *United States v. Quinn*, No. 10-20129, 2022 WL 1663536 (D. Kan. Nov. 2, 2022) (same); *Palermo v. United States*, No. 1:17-cr-290, 2022 WL 14129780 (S.D. N.Y. Oct. 22, 2022) (same).

---

[5] Moreover, Mr. Carter's argument that the disparity in drug offenses involving crack cocaine and powder cocaine supports his release is a nonstarter. The Probation Officer calculated Mr. Carter's base offense level pursuant to U.S.S.G. § 2D1.1 based on the converted drug weight (i.e., a nominal reference designation that is used as a conversion factor in the Drug Conversion Tables in the Sentencing Guidelines when combining differing controlled substances). PSR ¶¶ 26–27. Section 2D1.1 provides that an offense involving at least 100 kilograms, but less than 400 kilograms of converted drug weight (which the Probation Officer calculated to amount to 396.02 kilograms in Mr. Carter's case) has a base offense level of 24. *Id.* ¶ 27. Even if the crack cocaine converted drug weight were removed from the total combined drug weight *completely*, Mr. Carter would still be accountable for 201.79 kilograms of the converted drug weight due to the methamphetamine and marijuana involved in this offense. *See id.* ¶ 26. As this amount is still more than 100 kilograms but less than 400 kilograms, Mr. Carter's base offense level would not change and, therefore, his guideline range of imprisonment would remain the same.

Mr. Carter's third and final argument in support of his Motion is that Sentencing Guideline § 1B1.13 is inapplicable. ECF No. 37 at 1. In support of this argument Mr. Carter cites two cases. *See United States v. Trenkler*, No. 21-1441, 47 F.4th 42 (1st Cir. 2022) (finding U.S.S.G. § 1B1.13 does not constrain a district court when it addresses a compassionate release motion and a court can consider any facts that, within its discretion, it deems appropriate); *United States v. Davis*, No. 21-1166, 2022 WL 1101578 (3d Cir. Apr. 13, 2022) (summarily reversing and remanding for consideration of claim that "a change in law" could amount to extraordinary and compelling reason). However, the Court is unpersuaded by this argument as the Third Circuit has held that while U.S.S.G. § 1B1.13 policy statements are not binding on the courts they may be used to "shed light on the meaning of extraordinary and compelling reasons." *Andrews*, 12 F.4th at 260. Consequently, the Court may consider U.S.S.G. § 1B1.13 when considering motions for compassionate release.

In summary, none of the reasons stated in Mr. Carter's Motion constitute extraordinary and compelling reasons which warrant a reduction in Mr. Carter's sentence.

### 2.   Section 3553(a) Factors

Even if the Court had found that extraordinary and compelling reasons exist, Mr. Carter's Motion would fail based on a consideration of 18 U.S.C. § 3553(a) factors. Mr. Carter has not shown that a significant change in factors that led to his sentencing has occurred.

Mr. Carter has a lengthy criminal history, including a conviction for criminal conspiracy engaging—aggravated assault and aggregated assault after Mr. Carter was the perpetrator of a shooting. PSR ¶ 41. As to the current offenses, prior to Mr. Carter's arrest, he was observed on social media with firearms and narcotics. The search of his house recovered a significant amount of narcotics, some of which was intended for sale, and a ghost gun loaded with 21 rounds of

ammunition. These facts illustrate a danger to the community and the seriousness of the instant offenses.

For his instant offenses, Mr. Carter entered a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and the Court accepted the parties joint sentencing recommendation of 60 months' incarceration, four years supervised release, and a $200 special assessment. ECF Nos. 19, 29. In imposing this sentence, the Court considered Mr. Carter's health, including the injuries which resulted from Mr. Carter being the victim of a shooting, his mental health conditions, and his substance abuse issues. PSR ¶¶ 73–87. The Court imposed Mr. Carter's sentence approximately fourteen months ago, and the conduct at issue took place approximately two and a half years ago. Furthermore, after his sentencing, when Mr. Carter was accidentally released, while Mr. Carter reported he would turn himself in, a bench warrant had to be issued for his arrest. ECF No. 32.

Considering the Section 3553(a) factors, the Court does not find that reducing Mr. Carter's sentence by almost half would appropriately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. Accordingly, the Court finds that Mr. Carter has failed to meet his burden in demonstrating that the Section 3553(a) factors support granting his Motion for Compassionate Release.

## IV.  **CONCLUSION**

For the forgoing reasons, the Court will deny Defendant's Motion for Compassionate Release or Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 37).  An appropriate order will follow.


**DATED:**      **April 13, 2023**

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

Cc:    Pro se
        U.S. Attorney